CRAMER et al. v. MOTOR PLAYER CORPORATION.

Circuit Court of Appeals, Seventh Circuit.
April 13, 1927.

No. 3743.

1. Patents ⚖➜327(10)—Judgment overruling defenses in patent infringement suit held determinative in subsequent suit, wherein defendant, as plaintiff, asserted same claim.

Judgment in patent infringement suit, overruling defenses alleged to constitute advances over plaintiff's claims, held determinative in subsequent suit between same parties, wherein former defendant, as plaintiff, asserted same claim to improvement.

2. Patents ⚖➜328—1,431,907, claim 55, for apparatus for player piano, held not infringed.

Cramer patent, 1,431,907, claim 55, for suction apparatus for player piano, held not infringed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Patent infringement suit by Stanley S. Cramer and another against the Motor Player Corporation. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

Theodore Kenyon, of New York City, for appellants.

Joseph Harris, of Chicago, Ill., for appellee.

Before ALSCHULER, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. Appellants, plaintiffs, charged infringement of claims 36, 54 and 55 of Cramer patent 1,431,907 by defendant, owner of Garman patent 1,320,-224. The bill was dismissed, and appeal allowed.

What Cramer did, plaintiffs say, was (1) to arrange the fan and motor, so that the cool air entered first the motor and then the fan, instead of the reverse; (2) to prepare a bleed valve in the air inlet, so that, irrespective of conditions in the piano, there would be a continuous flow of cooling air through the motor and fan.

Plaintiffs' machine is called the "Motora," and defendant's the "Electora." As originally made, "Electora" had its fans above the motor, as shown in Figure 2, Garman patent No. 1,320,224.

[1] Defendant here, in the District Court of New Jersey, charged plaintiff corporation here and Garman, patentee in No. 1,320,224, with infringement of that patent by its "Motora." One of the defenses was that in the "Motora" the motor had been placed above the fan, so that the cool air entered the motor and then the fan, thereby solving an "overheating problem," present and unsolved in the "Electora."

The arrangement in the "Motora," in respect to the motor and fan, was as shown in Figure 1, Cramer patent No. 1,431,907 (not then issued), and the "overheating problem," there said to have been solved, is the same "overheating problem" that is here contended

was solved by Cramer, and marks the advance claimed by Cramer over Garman.

Since the New Jersey suit, defendant here has, in two "Electora" types, C and D, placed its fans below the motor. The New Jersey District Court, in its opinion, said of defendants there:

"They took the 'Electora,' reversed the parts, and made some slight changes in the shape and otherwise, and called it the 'Motora.' * * * The reversal and other changes effected produced no new function whatever."

In the same case, in the Court of Appeals (282 F. 435, 439), the court said:

"In making their device, the defendants reversed the parts of the device of the patent; in other words, they simply turned the structure upside down. Detail by detail, element by element, function by function, of the apparatus of the patent can be traced in the apparatus of the defendants, even by one unskilled in the art. * * * Mere reversal of mechanism, creating no new function, and no change in the essential mode of operation, does not effect a departure from the invention."

And, after saying that the motor was placed above the fan, and that in those changed positions the motor and the fan functioned exactly as they had before, the court said:

"The defendants confidently claim an advantage over the arrangement of the patent sufficient to take their device out of the claims of the patent. This advantage is that cool air coming into the upper chamber directly upon the heat generating motor tends to prevent overheating of the device, whereas in the device of the patent the air coming into the upper chamber is more or less heated by the baffle of the fan before it descends upon the motor in the lower chamber, and therefore does not cool it as effectually. To sustain this position the defendants introduced evidence that, according to tests, the temperature is higher in the lower chamber of each device and that it is 38 degrees less in the defendants' device than in the device of the patent. Conceding this difference in temperature to be due to the difference in position of the motor in the two apparatus, though this evidence of temperature is controverted by the plaintiff, there is no evidence that in the use of such devices there is a problem of overheating. Nor is there evidence that the device of the patent overheats, or that otherwise the motor arrangement in the defendants' device overcomes a defect in the device of the patent."

It is strenuously urged that the New Jersey case is not determinative of this case because there are elements here that were not there involved. So far as that which it is claimed plaintiff did, as set out in (1), supra, nothing is here involved that was not in the New Jersey case. Nor is there any element in claims 36 and 54 that was not there involved. Plaintiffs are not entitled to have the questions there in issue retried here.

[2] The other thing that plaintiffs say Cramer did, namely, "to prepare a bleed valve in the air inlet," is in this case, if at all, through the very indefinite and uncertain claim 55. The contention is that, through the plurality of air inlets in the container, Cramer solved the overheating problem, which caused the abandonment by defendant of the original "Electora." It is worthy of note that, although there were a large number of those "Electoras" put into use, plaintiffs have produced no evidence from those who used them and found them to be failures because, as is claimed, of the overheating difficulty. Plaintiffs have tried their case on the testimony of an expert witness, and on tests made before the master, and the master, seeing those tests, found against plaintiffs.

In support of defendant's contention that the idea of a plurality of inlets into a motor housing for the purpose of cooling the motor was old, defendant put in evidence patents: Allen No. 1,124,684, January 12, 1915; Smith No. 995,299, June 13, 1911; Roemer No. 1,133,184, March 23, 1915; Neimeyer No. 1,230,206, June 19, 1917; Harrold No. 1,260,282, March 19, 1918. Without going into those patents at length, it is sufficient to say that in them it is found that air inlets were provided for the same purpose that Cramer says he provided them. Those patents all antedate the Cramer patent.

Cramer's patent refers to the well-known tendency of high-speed motors to heat and the desirability of low temperatures therein, yet we find nowhere in the patent anything to indicate that he understood he was dealing with a problem of overheating. We have fully considered all the evidence and the all too frequent arguments of plaintiffs' expert, and are of opinion that (1) the "Electora" was not a failure because of overheating; (2) that defendant had no overheating problem; (3) that the use of a plurality of air inlets was old in the art of motor cooling.

It is not necessary to discuss the question as to whether introduction of air through the expression box mechanism would in any event infringe.

The decree is affirmed.