## UNITED MFG. & DISTRIBUTING CO. v. EVANS et al.

Circuit Court of Appeals, Seventh Circuit.
December 10, 1927.

No. 3891.

1. Patents ⬤═⇒328—No. 1,430,066, claims 13, 15, 20, for air cleaner for carburetor, held valid, not anticipated, and infringed by No. 1,438,-553.

Evans patent, No. 1,430,066, claims 13, 15, and 20, for purpose of cleaning the air used in a carburetor, *held* valid, not anticipated by Argall device, No. 527,473, used to extract ore-bearing dust from ore, or Boehning patent, No. 375,983, and named claims of Evans patent are infringed by Quam patent, No. 1,438,553.

2. Patents ⬤═⇒20, 236(2)—Mere change of location of propeller in air-cleaning device does not constitute invention or avoid infringement.

Mere change of location of air propeller in device for cleaning air is not such a change as to constitute an invention or avoid an infringement.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Edwin R. Evans and another against the United Manufacturing & Distributing Company. Decree for plaintiffs, and defendant appeals. Affirmed.

Wm. E. Anderson, of Chicago, Ill., for appellant.

Frank Parker Davis, of Chicago, Ill., for appellees.

Before EVANS, PAGE, and ANDERSON, Circuit Judges.

PAGE, Circuit Judge. In plaintiffs' (appellees') suit, the court found validity and infringement of claims 13, 15, and 20 of Evans patent, No. 1,430,066, for air cleaner. The defenses were noninfringement and anticipation in the prior art.

The claims are:

"13. In an air cleaner, the combination with a casing, of a suction air conduit in communication with said casing, and a deflector in said casing and overlapping the end of said air conduit, said casing with said deflector forming an unobstructed passageway adapted for the passage of a propelled current of air."

"15. In a structure for purifying air passing to a carburetor, the combination with a suction conduit connected to the carburetor, of a deflector for guarding the mouth of said conduit, and a fan for forcing air past said deflector, some of the air passing said deflector being drawn into said conduit."

"20. In an air purifier, the combination with a casing having open ends, of a deflector within said casing and forming therewith a Venturi passageway, means for causing a flow of air through said Venturi passageway, and a pipe having its end located adjacent to and protected by the deflector for withdrawing a portion of the air therefrom."

A longitudinal section of appellees' devise is shown herewith:

7 is the outer cylindrical casing, open at both ends. 10 is a conical, or nose-shaped, deflector, with diverging sides 11, so that there is a Venturi passage between 7 and the end of 11. With its end partially within the diverging sides 11 of the deflector, is the cylindrical connection 13, which leads, with other connections, to the carburetor. 15 is a deflector within the deflector 10. In operation, the air is blown through the casing 7, at the nose end of the deflector 10, and gathers force and speed by the contraction at the Venturi passage, so that the dirt and dust are carried out through the other end of 7. There is a slight expansion at the end of 11,

so that clean air passes around the end of 11 against the deflector 15, then is thrown and drawn by suction into the connection 13.

[1] Appellant manufactured under Quam patent, No. 1,438,553, and its device is shown in the following:

1 is the outer casing. 11 is called a frusto-conical member, upon which are fastened the upright vanes 12. The air enters at 5 and passes out, carrying the dust and dirt, at 6, gathering force and speed by going through the Venturi passage created between the bottom of the frusto-conical member and the casing 1. The clean air, in the larger chamber 10, expands at the lower edge of the frusto-conical member, and, drawn by the suction of the engine, enters the open end 8 of the conduit 2. The frusto-conical member is carried on a shaft or spindle, on the lower end of which is rigidly fastened the propellor 4. The downward suction through 2 operates upon the propeller 4, and rotates the frusto-conical member 11, with its vanes 12. The vanes 12, in operation, throw the air outwardly and downwardly, as claimed in the specification.

Appellant contends that the vanes 12 create an obstruction, so that there is not an "unobstructed passageway," as called for in the claims in suit. That contention is based upon the argument:

"The rotating deflector of appellant's device corresponds * * * to the wheel on the well-known windmill. It is driven by the air current. Inasmuch as it is driven by the air, it necessarily follows that it obstructs the flow of air through the passageway."

The "rotating deflector" is the frusto-

conical member with the vanes *12*. Whether, while not in motion, the vanes create an obstruction is immaterial, because the device is then inoperative. It is quite clear, from a study of the device and from the specification, that the rotating deflector is not driven by any action of the air upon the vanes. Instead, it is just as clear, that the vanes drive the air outwardly and downwardly through the Venturi passage, thereby accelerating, rather than obstructing the passage of air.

Appellant presented the only theory upon which there could be, in operation, any obstruction to the air by the vanes; but, as shown in the specification, the thing that rotates the frusto-conical member, with its vanes, is the propeller *4*. It is operated the same as the wheel on a windmill, being driven by the air current, which air current is created by suction through the conduit *2*. The propeller *4* is wholly below the Venturi passage and within the open end *8* of the conduit *2*. There is an unobstructed passage of air through appellant's, as there is through appellees', device.

[2] It is further urged that appellant uses no means to propel the air through its device. Instead of an outside fan to propel the air through the device, appellant uses the propellor *4*, which is operated by suction through the conduit *2*, thereby putting in motion the frusto-conical member, with its vanes, and, in addition to the centrifugal force, exerts a force that accelerates the movement of the air downwardly through the Venturi passage. We are of opinion that appellant has done no more than to change the location of the propeller, and such a change does not constitute invention nor avoid infringement. Cramer v. Motor Player Corp. (C. C. A.) 18 F.(2d) 450.

The prior art cited and relied upon by appellant covers a wide range, and includes dust collectors, ore and grain separators, steam separators, spark arresters, and air purifiers. The only prior art air-cleaning device, considered of sufficient importance to be discussed by appellant, is Funk, No. 1,319,-059. The only expert testimony dealing with that invention is to the effect that it looks like an utterly impractical device, with none of the characteristics of appellees' device. We are unable to read any claim in suit on that device.

Appellant relies upon Argall, No. 527,-473, as embodying the elements of all three of the claims in suit. This is one of the patents cited in the Patent Office, and is one of the patents upon which the original claims 1,

2, 6, and 7 of the patent were rejected. It is called a cyanid and chlorination process of treating gold or silver bearing ores. The Argall device, in its uses and purposes, seems so foreign to the patent in suit that its pertinency as a citation is not seen. The purpose of the Evans patent was to separate, and direct toward the carburetor of an internal combustion engine, a small portion of clean air from the main body of the air, bearing dust and dirt.

The Argall device, relied upon for anticipating the Evans device, and called in the specification a dust extractor, is shown in the following Figure 2 of the patent:

Its use is not to extract dust from air, so as to provide clear air for use in a carburetor or otherwise; but its use is to extract ore-bearing dust from the heavier particles of ore. Neither is thrown away, but both are preserved for future treatment. While there is formed, between the bottom of a cone and the outer casing, a Venturi passage, the cone, in

its relation to the outer casing, is not designed for the purpose of creating an accelerated current of air at the Venturi passage. The process, as stated in the specification, is:

"The crushed ore enters at *a* and is distributed over the central cone *b* falling in a thin shower from the base of the cone at *cc.*"

The dust is not carried away, as in the Evans device, but "an air exhaust fan *f* draws out the dust from the thin stream of ore falling from the base of the cone and discharges it into the dust collector or bin *g.*"

The expert, Carter, was examined at great length for the purpose of showing that the outer casing at the bottom did not discharge into an ore bin. Whether that is true or not, we do not deem of much importance, but in the specifications it speaks of "ore bin *g.*" Unquestionably, the "*g*" below the fan in the above figure is referred to, but whether the "*g*," at the lower end of the outer casing, and through which the ore (from which the ore-bearing dust was separated) was discharged, was also referred to, may be a question, but inasmuch as the ore was to be saved for future treatment, it seems probable that it was discharged into a basin or bin.

In the Argall patent, there was no purpose to force the air through the Venturi passage with such speed as to carry off the dust and dirt contained therein, and to arrange for such an expansion or draft as would separate and carry the clean air through the conduit *d*. On the contrary, the heavier portions of the ore went through by force of gravity, and the suction through the conduit *d* was so strong as to separate out and take the dust-laden air through *d* into the bin *g*.

Appellant's main reliance in the prior art is on the Boehning patent, No. 375,983. The Boehning device was cited in the Patent Office against original claim 8 of the Evans patent, and thereafter the Patent Office suggested two claims, which were subsequently introduced, with some slight modifications, as claims 19 and 20 of the patent.

The Quam patent No. 1,438,553, for air-cleaning device, applied for September 2, 1921, and under which appellant is defending, was issued December 12, 1922. The Evans patent in suit, No. 1,430,066, for air cleaner, was applied for December 30, 1918, and issued September 26, 1922. It appears from the record and from the specification that Quam, No. 1,438,553, had copending application filed October 4, 1920, for air cleaner, on which patent No. 1,434,562 issued November 7, 1922. It further appears that from October 4, 1920, to September 26, 1922, the Evans patent and two Quam patents were copending in the Patent Office. Neither the Patent Office nor Quam found any conflict between Quam patent, 1,434,562, and the Boehning patent.

We are of opinion that the operation and the purpose of the Evans device and of the Boehning device are quite dissimilar, and that the results are not accomplished in the same way. Claim 20 in suit calls for a casing having open ends. Both ends of the casing being open, permits a discharge into the open air of the dust laden air, so that only a portion of the air, by reason of the construction and relation of the two casings, is expanded and drawn into the inner casing and thence into the carburetor. On the other hand, in the Boehning patent, while the fan end of the casing is open, and while the other end is open in the sense that there is nothing immediately and directly closing it, yet it opens into a dirt and dust container, and the operation is not to carry off a larger portion of the air through the tube *2* and a smaller portion by reason of any expansion and draft through the tube *8*, but all of the air, because "the dust receptacle forms a dead air space, into which the air current is prevented from entering by reason of the confined body of air within said receptacle," so that it must, by reason thereof, and does, pass into the tube *8* and escape. The purpose of the Boehning patent is to gather and put into a container dust, shavings, etc. In the Evans, the purpose is to clean the air used in a carburetor. In the Boehning patent, while there is some expansion after the air current passes the end of the plate *10*, the real thing that necessitates its escape through the tube *8* is the fact that the dust receptacle so closes the end of the tube *2* that the air can go nowhere else than out through *8*.

We are of opinion that the Boehning device does not anticipate the Evans invention, and that claims 13, 15, and 20 are valid and infringed.

Decree affirmed.